IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CUTTING EDGE TREE** | : | |
| **PROFESSIONALS, LLC,** | : | CIVIL ACTION |
| *Plaintiff*, | : | |
| | : | |
| v. | : | |
| | : | |
| **STATE FARM FIRE CLAIMS COMPANY,** | : | |
| *Defendant.* | : | No. 23-cv-3197 |

### MEMORANDUM

**KENNEY, J.**                                                                                                          October 28, 2024

Plaintiff Cutting Edge Tree Professionals, LLC brought suit asserting the following counts: breach of contract and breach of good faith and fair dealing against Defendant State Farm Fire and Casualty Company (Count I);[1] bad faith insurance practices under 42 Pa. C.S. § 8371 against Defendant (Count II); and negligence against Defendant April Grant (Count III). On January 4, 2024, the Court dismissed all counts except Count II: the bad faith insurance practice claim against Defendant under 42 Pa. C.S. § 8371. ECF Nos. 18, 19.

Before the Court is Defendant's Motion for Summary Judgment on the final remaining claim. ECF No. 50. With discovery complete, Defendant moved for summary judgment asserting the Plaintiff cannot meet its burden to prove by clear and convincing evidence that Defendant engaged in bad faith insurance practices under 42 Pa. C.S. § 8371. Plaintiff asserts that the Defendant acted in bad faith under the statute because it failed to negotiate a settlement, make payments in some manner other than to the insured parties, or file an interpleader action.

---

[1] Defendant State Farm Fire and Casualty Company is incorrectly named in the Complaint, and therefore the case caption, as State Farm Fire Claims Company.

Defendant's position is a novel theory of a first-party bad faith claim under Pennsylvania law. For the reasons described below, the Court will grant Defendant's Motion.

I.       BACKGROUND AND PROCEDURAL HISTORY

On April 1, 2022, Paul and Donna Kline (collectively, the "Insured"), had a large tree fall on their garage in Bellefonte, Pennsylvania. ECF No. 1 ¶ 22. On or about April 1, 2022, the Insured contracted with Plaintiff to perform an emergency tree removal. *Id.* The contract between the Insured and Plaintiff "specifically contained an Irrevocable Assignment of Benefits with a Directive to Pay within the Contract, for this claim regarding the expense of the hazardous tree removal claim and reimbursement from the [Insured's] policy." ECF No. 11-1 ¶ 9, 16-22

On or about April 8, 2022, Plaintiff prepared and sent an itemized invoice in the amount of $26,400 to Defendant via its agent, April Grant. *Id.* ¶ 13. No payment or response from Defendant or Ms. Grant was received. *Id.* ¶ 14. Plaintiff contacted Defendant via Ms. Grant several times. *Id.* ¶¶ 15–22, 25–32. However, no payment was made to Plaintiff; rather, Ms. Grant informed Plaintiff that "the bill was paid." *Id.* ¶¶ 14, 21. Plaintiff informed the Insured of Ms. Grant's statements, and sometime thereafter the Insured supplied a check to Plaintiff in the amount of $8,463.45, substantially less than the invoiced amount. *Id.* ¶ 23. Plaintiff continued attempting to contact Defendant and Ms. Grant in an effort to resolve the matter but was unsuccessful. *Id.* ¶¶ 25–32.

Plaintiff instituted this action in the Court of Common Pleas of Delaware County, Pennsylvania on May 3, 2023. ECF No. 1 ¶ 2. On August 18, 2023, Defendants filed a Notice of Removal to the United States District Court for the Eastern District of Pennsylvania alleging that removal was proper pursuant to 28 U.S.C. § 1332(a)(1) and § 1441(a). ECF No. 1. Plaintiff moved to remand, but the Court denied Plaintiff's Motion. ECF Nos. 12, 13.

On January 4, 2024, this Court dismissed Count I (breach of contract and breach of good faith and fair dealing against Defendant) and Count III (negligence against Ms. Grant) with prejudice. ECF Nos. 18, 19.[2] However, the Court found that Plaintiff had standing to assert Count II, a first-party bad faith claim, either as an injured plaintiff or judgement creditor by virtue of the underpayment for services rendered or the Assignment of Benefits executed between the Insured and Plaintiff.[3] ECF No. 18 at 8-10; ECF No. 19. The parties proceeded to discovery, which concluded on or about August 1, 2024. ECF No. 49.

The following relevant uncontested facts were determined or confirmed during discovery: Plaintiff submitted its invoice and contract between itself and the Insured to Defendant before Mihalko's General Construction ("Mihalko") submitted an estimate for the building repairs on May 9, 2022, ECF No. 50 ¶¶ 23–25; neither Ms. Grant nor Defendant made an effort to settle the claims of either contractor for less than the invoice or estimate and they did not attempt to discuss pro-ration or a settlement among the Plaintiff and Mihalko, ECF No. 51 ¶¶ 18–21; Defendant did not initiate an interpleader action, *id*. ¶ 35; Ms. Grant believed the obligation was to pay the policy holder directly, ECF No. 50 ¶ 34; and the entirety of the policy coverage amount, $33,696.02, was paid directly to the Insured, of which $8,463.45 was then paid to Plaintiff, *Id.* ¶¶ 34, 37.

On September 3, 2024, Defendant filed the instant Motion for Summary Judgment, ECF No. 50, to which Plaintiff filed a Response in Opposition on September 24, 2024, ECF No. 51.

---

[2] Plaintiff's breach of contract claim (Count I) was time barred by a provision in the insurance policy providing "any action by any party must be started within one year after the date of loss or damage." ECF No. 18 at 4. Plaintiff's negligence claim (Count III) was dismissed with prejudice since no duty outside of the contract is owed by the insurance adjuster to the insured. *Id.* at 10-12.

[3] Plaintiff's bad faith insurance practices claim (Count II) was not dismissed since Plaintiff had standing either as an injured plaintiff or judgement creditor to pursue the claim. *Id.* at 8-10. Further, the claim was not time barred since an action under § 8371 is subject to a two-year statute of limitations. *Ash v. Cont'l Ins. Co.*, 932 A.2d 877, 885 (2007).

Defendant filed its Reply on October 4, 2024. ECF No. 52. Accordingly, Defendant's Motion is now ripe for consideration.

## II.  LEGAL STANDARD

Summary judgment is granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment carries the burden of identifying the "'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citation omitted). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted).

The court must "examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007) (citations omitted). Crucially, however, a party opposing a motion for summary judgment may not "rely merely upon bare assertions, conclusory allegations or suspicions." *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982) (citations omitted). Its opposition "must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000) (citing *Celotex*, 477 U.S. at 324). In other words, facts must be viewed in the light most favorable to the opposing party only if the dispute regarding those facts is "genuine." *See Scott v. Harris*, 550 U.S. 372, 380 (2007) (citation omitted).

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). In such situations, a court must grant summary judgment in favor of the moving party.

Further, "[t]he fact that plaintiff's burden [in a bad faith claim] at trial is higher than preponderance of the evidence means that plaintiff's burden in opposing summary judgment is higher as well." *Quaciari v. Allstate Ins. Co.*, 998 F. Supp. 578, 581 (E.D. Pa. 1998), *aff'd*, 172 F.3d 860 (3d Cir. 1998); *see also Amica Mut. Ins. Co. v. Fogel*, 656 F.3d 167, 178 (3d Cir. 2011), as amended (Dec. 9, 2011) (noting that, to prove bad faith, evidence "so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the defendants acted in bad faith" is required (citation omitted)).

### III.   DISCUSSION

Defendant argues that it is entitled to summary judgment as a matter of law. In response, Plaintiff asserts an expanded view of Pennsylvania first-party bad faith claims, and argues that under such view, the case should be submitted to a jury for review.

The material facts are undisputed, however. Defendant paid the entirety of the policy limit directly to the Insured believing this to be the requirement, ECF No. 50 ¶¶ 34, 52, after receiving the invoice and Assignment of Benefits contract from Plaintiff and an estimate from Mihalko that exceeded the policy limit, ECF No. 50 ¶¶ 23–25, 30. Neither Defendant nor its agent, Ms. Grant, attempted to negotiate a lower payment for either Plaintiff or Mihalko, ECF No. 51 ¶¶ 18-19; mediate a pro rata payment between the two, *id.* ¶ 20; pay the parties in a first-come-first-served manner, ECF No. 50 ¶ 34; or file an interpleader action, ECF No. 51 ¶ 35. Insured paid an insufficient amount to Defendant to cover the invoice for services rendered. ECF No. 50 ¶¶ 20, 37. With only irrelevant or non-material facts in dispute, the Court will grant the motion for summary judgement.

Under Pennsylvania law for first-party claims, "to recover under a claim of bad faith, [a] plaintiff must show [by clear and convincing evidence] that the [insurer] [1] did not have a reasonable basis for denying benefits under the policy[;] and that [2] defendant knew or recklessly disregarded its lack of reasonable basis in denying the claim." *Terletsky v. Prudential Prop. and Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. 1994) (citation omitted);[4] *W.V. Realty, Inc. v. N. Ins. Co.*, 334 F.3d 306, 312 (3d Cir. 2003) (citation omitted).

The statute does implicate a broader range of insurer conduct that could also be sufficient for a bad faith claim, including unreasonable delays in payment, *see Ania v. Allstate Ins. Co.*, 161 F. Supp. 2d 424, 430 (E.D. Pa. 2001) (citing *Terletsky*, 649 A.2d at 688), reliance on a "frivolous" interpretation of an insurance contract, *see Hudgins v. Travelers Home & Marine Ins. Co.*, No. CIV.A. 11-882, 2013 WL 3949208, at *9 (E.D. Pa. July 31, 2013), failure to thoroughly investigate a claim, *see Brunner v. Allstate Vehicle & Prop. Ins. Co.*, No. CV 24-1293, 2024 WL 2847189, at *4-5 (E.D. Pa. June 4, 2024), and misleading or conflicting statements by insurance adjusters, *see Moravia Motorcycle, Inc. v. Allstate Ins. Co.*, 602 F. Supp. 3d 762, 767 (W.D. Pa. 2022).

In all such evaluations, though, "[t]he fact that plaintiff's burden [in a bad faith claim] at trial is higher than preponderance of the evidence means that plaintiff's burden in opposing summary judgment is higher as well." *Quaciari*, 998 F. Supp. at 581; *see also Amica Mut. Ins. Co. v. Fogel*, 656 F.3d 167, 178 (3d Cir. 2011), as amended (Dec. 9, 2011) (noting that, to prove bad faith, evidence "so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the defendants acted in bad faith" is required (citation omitted)).

---

[4] The two-pronged test in *Terletsky* has long been the appropriate articulation of the requirements of 42 Pa. C.S. § 8371. *See Rancosky v. Wash. Nat'l Ins. Co.*, 170 A.3d 364, 374 (2017) (explaining that "the longstanding standard in Pennsylvania has been the Superior Court's two-pronged test in *Terletsky* and its subsequent clarification that self-interest and ill-will, while probative, is not required.").

Plaintiff has not demonstrated beyond conclusory statements that Ms. Grant or the Defendant acted unreasonably in reviewing the claim and Insured's policy. *See* ECF No. 51 ¶¶ 12-17. The review of Plaintiff's invoice, Mihalko's estimate, and the terms of the policy led to the prompt payment of the complete policy limit, albeit directly to the Insured rather than Plaintiff. There are no averments that the payment to the Insured was delayed. Other Pennsylvania caselaw implicating a broader range of conduct beyond the two-pronged test of *Terletsky* is inapplicable since the Insured received a payment of the full policy limit.

### A.    Plaintiff's Expanded View of First-Party Bad Faith Law

Without a violation of the test under *Terletsky* and related cases, Plaintiff's theory of recovery hinges on an expanded view of a first-party claim of bad faith under 42 Pa. C.S. § 8371. Plaintiff asserts that Defendant acted in bad faith by paying the entirety of the policy limit directly to the Insured without attempting to negotiate settlement with the contractors involved, prorate the payment between them, make payments in a first-come-first-served manner, or file an interpleader action. ECF 51 at 14-15.

This view would dramatically expand the obligations of an insurer beyond the current requirements of Pennsylvania Supreme Court and other binding precedent. Plaintiff provides caselaw primarily from other states along with a few Pennsylvania Superior Court cases and relies on the standards of the Unfair Insurance Practice Act ("UIPA") to support its expanded view of a first-party bad faith claim. "When a state's highest court has yet to speak on a particular issue, it becomes the role of the federal court to 'predict how [the state's highest court] would decide the issue were it confronted with the problem.' To that end, we should give careful consideration to decisions of the state's intermediate appellate courts . . . ." *Jaworowski v. Ciasulli*, 490 F.3d 331, 333 (3d Cir. 2007) (alteration in original) (citations omitted).

7

Plaintiff's reliance on the standards contained in UIPA is unconvincing.

> Prior to [the two prong test laid out in] *Terletsky*, the Pennsylvania Superior Court had looked to the UIPA and the [Unfair Claims Settlement Practices regulations] to give content to the concept of bad faith as used in 42 Pa. Cons. Stat. § 8371. *See, e.g.*, *Romano v. Nationwide Mutual Fire Insurance Company,* 435 Pa. Super. 545, 646 A.2d 1228 (1994). *Terletsky* did not, however, and it is apparent from a comparison of the bad faith standard it adopted with the provisions of the UIPA and the UCSP that much of the conduct proscribed by the latter is wholly irrelevant to whether an insurer lacks a reasonable basis for denying benefits and, if so, whether it knew or recklessly disregarded that fact.

*Dinner v. United Servs. Auto. Ass'n Cas. Ins. Co.*, 29 F. App'x 823, 827 (3d Cir. 2002).

Plaintiff also cites no directly applicable Pennsylvania caselaw for this expanded view of first-party bad faith claims.[5] The survey of Pennsylvania intermediate court caselaw provided by Plaintiff and this Court's own review of Pennsylvania caselaw are insufficient to dramatically extend the boundaries of first-party bad faith claims. Plaintiff has not met the heightened standard required to survive this motion for summary judgment.

Without directly applicable first-party bad faith caselaw, Plaintiff seeks to blur the line of a first-party bad faith claim with what constitutes bad faith in a third-party action—failure to defend and settle claims. *See, e.g.*, *Birth Ctr. v. St. Paul Cos., Inc.*, 787 A.2d 376, 389 (2001) (holding assorted damages are available when an insurer acts in bad faith by refusing to settle a claim); *J.H. France Refractories Co. v. Allstate Ins. Co.*, 626 A.2d 502, 510 (1993) (emphasizing

---

[5] Plaintiff claims that "a review of cases across the country reveals that courts have universally found insurance companies to have committed bad faith where the insurer made no effort to settle claims within the policy limits, even when the claims exceeded the policy limits." ECF No. 51 at 11-12 (emphasis removed). In support of the universality of the claim, Plaintiff cites cases varying in appellate authority involving the law of nine other states. *Id.* at 11-13. Defendant's Reply clarifies that all these non-binding cases involve third-party actions and/or multiple claimants, which is not the case of the present first-party action. *See* ECF No. 52 n. 2.

The Court acknowledges that other states might find a first-party bad faith claim if presented with the present facts under the law of those states. But the cases presented are neither binding precedent nor are they "universal." Further, their litigating parties and postures are different than the case at bar. The Court turns to Pennsylvania caselaw cited for a further analysis.

the duty to defend, which extends beyond mere indemnification, falls upon insurer). The distinction between first and third-party claims reflects the different purposes for obtaining first and third-party insurance.[6]

Plaintiff's survey of Pennsylvania bad faith law and analysis provides just *Maguire v. Ohio Casualty Co.*, 602 A.2d 893 (Pa. Super. 1992) and *Scharnitzki v. Bienefeld*, 534 A.2d 825 (Pa. Super. 1987) in support of this expanded view of first-party bad faith law. ECF No. 51 at 9-15. Plaintiff relies on *Maguire* for the proposition that "any payment of the policy limits which does not release the insured from a pending claim . . . [also] raises serious questions as to whether the insurer has discharged its policy obligations in good faith." 602 A.2d at 896. *Maguire* involved a

---

[6] The leading treatise on insurance, Couch on Insurance, provides simple definitions and examples that highlight the differences between first and third-party insurance:

> "First-party" insurance is a contract between the insurer and the insured to protect the insured from its own actual losses and expenses. Property insurance, fidelity insurance, and medical/health insurance are all examples of first-party insurance.
>
> "Third-party" insurance is a contract to protect the insured from losses resulting from actual or potential liability to a third party. This protection may involve defending the insured from suit, paying or settling a claim against the insured, or a combination of both. Liability insurance is third-party insurance.

§ 198:3 (3d ed. 2023)

Further, Couch on Insurance provides that the "most obvious distinction in the claims handling context is that first-party insurance . . . does not involve any need or duty to provide the insured with a legal defense." *Id.*

The Third Circuit succinctly describes the distinction in types of insurance, albeit under New York and New Jersey law, as follows:

> The primary aim of third-party insurance is to defend and indemnify insureds against liability for claims made against them as a result of their own conduct. First-party coverage, on the other hand, protects against loss caused by injury to the insured's own property. Wholly different interests are protected by the two distinct forms of coverage . . . We are persuaded that the time-honored distinction between the two types of insurance coverage is valid and should be maintained.

*Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2002) (citation omitted).

third-party death claim against the insured. *Id.* at 893-94. After exhausting the policy limit in settling a third-party claim, the insurer refused to defend the insured in a subsequent action against the insured. *Id*. *Maguire* is inapposite, not only because it involves a third-party claim, but also because it held that the insurer did not have a continuing obligation to defend because the policy was unambiguous that the obligation to defend terminated upon exhaustion of the policy limits. *Id*. at 894-95.

Plaintiff seeks to use *Scharnitzki* to show that **not** proceeding with a first-come-first-served approach to distributing the policy limit is, at least in part, evidence of bad faith. 534 A.2d at 826; ECF No. 51 at 12. This reliance is based on a logical fallacy that extends the reasoning of the case beyond its actual meaning. *Scharnitzki* involved a claim against an insured for personal injury and property damage caused by a fire for which the insured may have been partially liable. 534 A.2d at 826. With the potential for greater liability than the policy limit to more parties than just the current claimant, the insurer petitioned to intervene and deposit the policy limit with the court. *Id.* at 826-27. The trial court rejected this petition, citing fears of an attempt to vitiate the policy requirement of defending the insured up to the policy limit, and the superior court affirmed on the ground that it was not a final order and did not deny the insurer the relief it was entitled—the insurer still would only pay its policy limit. *Id.*

*Scharnitzki* provided examples in other states where first-come-first-served distributions according to the priority of judgement did not violate the insurer's obligation of good faith. *Id.* at 827. Plaintiff commits the logical fallacy of denying the antecedent by relying on the inversion of this rationale. While *Scharnitzki* states that paying out to claimants in a first-come-first-served manner according to priority of judgment would amount to payment in good faith, *id.*, it does not

stand for the inverse: that paying out a policy in a manner other than first-come-first-served is evidence of bad faith.

With no dispute of material facts, inappropriate reliance on standards of UIPA, and a few inapposite Pennsylvania cases cited in support of the dramatic expansion of first-party bad faith claims, this Court will exercise judicial restraint and refuse to expand the boundaries of current Pennsylvania bad faith law.

### IV.   CONCLUSION

For the reasons stated above, this Court will grant Defendant's Motion for Summary Judgment on the final remaining bad faith claim under 42 Pa. C.S. § 8371. An appropriate Order will follow.

**BY THE COURT:**

**/s/ Chad F. Kenney**

**CHAD F. KENNEY, JUDGE**